E. BEST ET AL. *v.* MARY E. BURNAM.

**Homestead.**

A widow who derives the whole estate of her husband by and through his will has no claim of a homestead in the land.

**Claim of Sureties on Notes.**

Where a husband is in debt at the date of his death, but by his will devised all his estate to his widow, who took possession of the estate and controlled it and borrowed money with which to pay the debts of her husband, giving her notes thereon upon which sureties were placed, such sureties upon the failure of the widow to pay have no lien on the estate, and no claim which is superior to that of other creditors of the widow, especially where they become sureties on the strength of their belief that the estate belonged to her and that she would be able to pay her debts.

APPEAL FROM GARRARD CIRCUIT COURT.

December 17, 1881.

OPINION BY JUDGE PRYOR:

The husband of Mrs. Burnam died in the year 1873, and in the year 1874 she administered upon his estate. They had no children, or if any, none survived her husband. The whole of his

estate he devised to his wife after the payment of his debts. She took possession of the estate or devise under the will and continued to use and occupy it as her own from the date of the death of her husband until the year 1879, when, finding herself embarrassed, she executed to Kauffman a conveyance in trust for creditors, by which she passed the title to the whole of her estate for their benefit. At the time of her husband's death he was somewhat involved, and the pecuniary embarrassments of the widow resulted from the attempt on her part to pay his debts, that she might enjoy it without being annoyed by creditors. She borrowed money from time to time to enable her to pay those debts, and struggled through a period of five years to relieve the estate of the obligations upon it. She was in possession of the estate, using it as her own, as she had the right to do under the will. This use was valuable, and from it could have been realized a considerable sum in the way of rentals, not less than $2,000.

Nearly all the business transactions she had were in her own right. The money she borrowed was upon her own credit, and those who dealt with her regarded her as the sole owner of the estate, which she was, and this gave her credit. She borrowed money to pay off the debts of her husband and for other purposes. Best, Montgomery and others became her sureties on certain obligations for the loan of money that they say, and doubtless such was the fact, was applied to the payment of her husband's debts. They claim that they became sureties on the faith of the estate left by the husband, and looked to that for payment, while the widow says they were her sureties and the money was loaned on her individual liability. They are not sureties on any bond executed by the widow as administrator, but claim that, as the money she borrowed was paid on the debts due by the husband, she being entitled to a credit for the amount paid, they should be substituted to her rights, and that, as between her husband's creditors and her individual creditors, the husband's creditors having a prior lien on this estate, this lien should extend to them.

The sureties of an administrator on his bond, when he has overpaid or paid more than the personal assets, may proceed to subject the real estate, because the administrator would have that right, but the case here presents no such state of case. Here

the widow, claiming this property as her own, has been using it for years, and by reason of the devise to her has obtained a credit originating in the execution of her individual obligations to many creditors, who are asking payment. When they apply for payment the response by the widow is that she has borrowed money and paid off the debts of her husband, and when these are satisfied they can assert their claims. An estate to which she has unquestioned title, and that she has used for years in her own interest, and upon which this credit has been obtained, she, or her sureties, desire now to have sold for her own benefit, to reimburse her for money borrowed at the expense of those who trusted her for the reason that she was the real owner. This is not equity. In fact, Best and others were crediting Mrs. Burnam in the same way; they looked to her as the owner of this estate and believed her able to pay her debts; and neither Mrs. Burnam nor her sureties on this individual paper will be allowed to take the application of the money for the purpose of acquiring a preference. The administratrix, who had used the estate for years for her own purposes, would not be allowed any priority, and certainly her sureties upon notes for borrowed money will not, as their equity, if they have any, must be derived from her.

The property sold by her was purchased in good faith. She was invested with title, and certainly could sell for the payment of debts. These purchasers will not be disturbed, nor will the liens acquired by the levy of the execution be disturbed in favor of these appellants. Certainly as against them the creditor had the right to levy, and to assert his lien by reason of it.

As to the homestead of Mrs. Burnam, she had none. She derived none from the husband, as she held under the will. She was not entitled to a homestead by reason of the title vested in her, as she was without a family and had no one with her to whom she was under a natural or legal obligation to support. The little girl's father was a man of wealth, able to take care of her and entitled to the custody of his child at any time. The homestead should have been denied, and the claim of the commissioner in the suit in which the husband's estate was involved should have been allowed as a preferred claim.

It is argued in behalf of the appellants that the conveyance to the trustee is fraudulent because it recites that the object is to prevent a sacrifice of the property by creditors. This declaration in

the conveyance might be regarded as a badge of fraud, if that instrument as well as the proof did not show an honest purpose on the part of the widow to sell her property to pay her debts. There was no intent on her part to perpetuate a fraud. She had been endeavoring to sell her estate in order to pay her debts, and finding that she could not do so, placed it in the hands of a trustee for that purpose. The object was to pay all the debts, no preference being given, except such as resulted from operation of law; and where all creditors were placed upon the same footing as far as the widow had the power to act, it seems to us the deed should be upheld.

We perceive only two errors in the judgment. The homestead should have been denied, and the commissioner, Price, who acted as such in the action in which the estate of her husband was interested, should have priority over the general creditors of the widow. He is in fact a creditor of the husband's estate.

Judgment *reversed* and cause remanded for further proceedings consistent with this opinion.

*W. O. Bradley, H. T. Hall, Walton & Kauffman, for appellants. Anderson & Herndon, B. M. Burdett, for appellee.*